IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 13, 2015

**STEVEN O. HUGHES-MABRY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Sullivan County**
**No. C63827   R. Jerry Beck, Judge**

_____

**No. E2015-00398-CCA-R3-PC – Filed December 9, 2015**

_____

The Petitioner, Steven O. Hughes-Mabry, appeals the Sullivan County Circuit Court's denial of his petition for post-conviction relief from his convictions of possession of 0.5 gram or more of cocaine with the intent to sell or deliver within 1000' of a school zone, introduction of contraband into a penal institution, and driving on a suspended license, for which he is serving an effective fifteen-year sentence. He contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claims and that the court erred in excluding evidence relevant to an issue that was not raised in the petitions. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Jessica C. McAfee, Greeneville, Tennessee, for the appellant, Steven O. Hughes-Mabry.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Barry P. Staubus, District Attorney General; Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts underlying the Petitioner's convictions were summarized by this court in the appeal of the convictions:

> The evidence presented at trial revealed the following facts. Officers Steve Summey and Tim Crawford of the Kingsport Police Department were at the Sunoco gas station around 9:00 p.m. on October 30, 2007. The gas

station was located on Lynn Garden Drive, which, in 2007, was in the vicinity of Tri–Cities Christian Elementary School.

The two officers were wearing "plain clothes" and were sitting in an unmarked police car, which was parked facing the front of the store "on the far right parking space." While they were observing the area, a gray Pontiac Grand Am entered the gas station parking lot and parked on the south side of the building, which was "directly in front of" their police car. The driver of that vehicle, a white male, exited the car and stood beside it for a short while. He then opened the car's hood, but never looked inside at the engine compartment. Neither officer observed any mechanical problems with the vehicle when it entered the gas station parking lot.

Officer Summey opined that the man appeared to be "waiting for someone," looking in the direction of the "other parking spaces." Thereafter, a purple BMW, driven by the Defendant, entered the gas station's parking lot and parked in front of the station, next to the unmarked police car. Both officers testified that, after the Defendant exited his vehicle, he made eye contact with the driver of the Grand Am. The two men then proceeded inside the store together.

Sgt. Crawford followed the men inside the gas station. At some point, Sgt. Crawford witnessed the two men having a conversation in the back of the store. According to Sgt. Crawford, both men glanced at him and then separated. Sgt. Crawford thereafter returned to his vehicle and told Officer Summey that he believed a drug deal was about to take place. As Sgt. Crawford was heading back inside the store, the two men exited the gas station. It did not appear to the officers that either man had made a purchase while inside the store. Officer Summey confronted the white male, and Sgt. Crawford stopped the Defendant.

Officer Summey testified that he identified himself as a police officer to the white male and requested consent to search his person. According to Officer Summey, the white male "was very nervous" and "shaking," looking "toward the direction of [the Defendant]." After obtaining consent from the white male, a search of his person did not reveal any drugs, only some cash in "one pocket" and a twenty-dollar bill in the pocket of his jacket. Officer Summey explained that keeping money in separate pockets was indicative of a drug transaction; according to Officer Summey, a person about to purchase drugs engages in this behavior to keep

-2-

their money separate and not "draw attention to all their money." Officer Summey, having no further cause to detain this individual at that time, released him and went to assist Sgt. Crawford with the Defendant. According to Officer Summey, his encounter with the white male was "very quick," lasting "[a] minute or less."

In the meantime, Sgt. Crawford had likewise approached the Defendant and identified himself as a police officer. He asked to speak with the Defendant, and Sgt. Crawford maintained that the ensuing conversation was consensual. Sgt. Crawford asked the Defendant if had any identification, but the Defendant was unable to produce a driver's license. The Defendant gave Sgt. Crawford his personal information and told Sgt. Crawford that he lived in Michigan. The Defendant further informed Sgt. Crawford that he had lost his driver's license, so Sgt. Crawford attempted to confirm through dispatch whether the Defendant had a valid license. According to Sgt. Crawford, the Defendant became "increasingly nervous" and "real fidgety." Believing that the Defendant was going to run, Sgt. Crawford handcuffed the Defendant "temporarily until [they] determined what his license status was."

A records check in both Michigan and Tennessee revealed no valid license for the Defendant. The Defendant then told Sgt. Crawford that, although he lived in Michigan, he had a Georgia driver's license. Dispatch confirmed that the Defendant's Georgia license was suspended. At that time, Sgt. Crawford advised the Defendant that he was under arrest for driving on a suspended license, but did not inform the Defendant of his *Miranda* rights. At trial, the parties stipulated that the Defendant's license was in fact suspended.

Officer Summey informed the Defendant that he was going to be transported to the county jail. The officers attempted to search the Defendant's person there at the gas station, but the Defendant refused to spread his legs. Officer Summey asked the Defendant if he had drugs hidden on his person, and the Defendant replied that he did not. Officer Summey explained to the Defendant that if he brought drugs or weapons into the jail, he could face additional charges.

Once inside the jail, a more thorough search of the Defendant's person was conducted. Thirty-two "rocks" were found in the Defendant's buttocks and one "rock" was found in the brim of the Defendant's hat. The

-3-

thirty-two "rocks" were all individually packaged. Officer Summey opined that the "rock" found in the Defendant's hat was easily accessible to the Defendant and worth approximately twenty dollars. Several of the "rocks" were later tested by the Tennessee Bureau of Investigation, revealing .12 grams of cocaine in the package in the Defendant's hat and .62 grams of cocaine in four of the thirty-two "rocks" from the Defendant's buttocks. Based on the established weight, it was determined that further testing of the remaining "rocks" was not needed.

Also, the Defendant was interviewed once in custody. After receiving *Miranda* warnings, the Defendant confessed to selling drugs.

*State v. Steven O. Hughes-Mabry*, No. E2011-02255-CCA-R3-CD, 2013 WL 4046466, at *1-3 (Tenn. Crim. App. May 16, 2013), *perm. app. denied* (Tenn. Oct. 16, 2013).

On July 17, 2014, the Petitioner filed a pro se petition for post-conviction relief, which was later amended by counsel. At the post-conviction hearing, the Petitioner testified that his only meetings with trial counsel occurred at the Petitioner's court appearances and that they met about two or three times before the trial. He denied that he had ever been to counsel's office and said that he did not remember meeting with counsel other than at the courthouse. The Petitioner said they never discussed obtaining video surveillance evidence from the gas station at which the Petitioner was arrested. The Petitioner said he learned after the trial that the gas station had video surveillance cameras.

The Petitioner testified that he and trial counsel discussed the possible defenses to the charges and that counsel used the applicable defenses at the trial. The Petitioner thought the issues were "ill-chosen" by counsel. He thought counsel did not conduct a sufficient investigation to discover "winning issues."

The Petitioner said he and trial counsel never discussed whether counsel would hire an expert to determine whether the offense took place within 1000' of a drug-free school zone. He did not recall counsel's stating that counsel had researched the property lines and deed registry and determined that the offense occurred within 1000' of a school. He said counsel did not hire an expert regarding the distance from the school zone. He did not recall whether counsel pointed out during the trial that an independent measurement had not been taken.

The Petitioner testified that the motion to suppress was denied. He said that the only time trial counsel and he discussed the motion to suppress was on the day of the

-4-

hearing and that he did not recall receiving a copy of the motion before the hearing. When asked about the shortcomings he perceived relative to the motion to suppress, the Petitioner said counsel's "arguments were limited and . . . they just weren't strong enough . . . in my opinion." He said counsel led him to believe counsel would be able to have the evidence of the drugs suppressed based upon an illegal stop and agreed counsel advised him that the only way to prevail was to succeed in the motion to suppress. The Petitioner acknowledged that once the motion to suppress was denied, he was likely to be convicted.

The Petitioner testified that he only knew of one plea offer, which was for eight years. He said he and counsel decided together to reject the offer and go to trial. He said the offer expired by the time the motion to suppress was denied but acknowledged he never specifically asked counsel if it had expired.

The Petitioner testified that counsel should have argued that a *Brady* violation occurred instead of arguing that a *Ferguson* violation occurred. *See Brady v. Maryland*, 373 U.S. 83 (1963); *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). The Petitioner thought he told counsel at the time that the Petitioner did not think *Ferguson* was factually on point. He explained that in his case, the unidentified white male with whom the police spoke at the gas station was a person of interest, not a missing witness. The Petitioner did not think counsel provided an adequate argument regarding what the unidentified white male could have provided for the defense. The Petitioner thought the unidentified man could have offered testimony to contradict that of the arresting officers. The Petitioner noted that he did not testify on his own behalf and that the unidentified man's testimony would have given the jury another side of the story.

The Petitioner testified that counsel did not object to the evidence from the police officers that the unidentified man had $20 separate from his other cash, which the State theorized was because the man was at the gas station to purchase drugs from the Petitioner. The Petitioner said the man's possessing $20 and the drugs the Petitioner possessed were the main evidence against him. The Petitioner thought that counsel had not adequately cross-examined the police officers in order to cast doubt upon their testimony. He said counsel should have objected to the testimony about the man's possessing $20 on the basis the man was not present at the trial.

The Petitioner acknowledged his written police statement. He did not recall whether his *Miranda* rights were read to him and did not recall signing the statement, although he acknowledged the signature was his. He did not remember telling the police that he had family in Kingsport and that he lived with his sister. He said he did not have family in Tennessee or a sister in Kingsport. He said the statement inaccurately said that

he was in Kingsport selling cocaine. When asked why he had thirty-two individually wrapped pieces of cocaine in his buttocks, he said they were for his personal use. When asked about a single piece of cocaine that was in his hat, he responded, "That's . . . the first I even remember of that." He denied that he had walked into the store at the gas station with the unidentified man and left the store when he noticed the police inside. The Petitioner agreed, though, that he did not have a driver's license with him at the time and that his license had been suspended. The Petitioner said he had been "heavily intoxicated" the night the statement was given but did not think he told counsel about his intoxication. He said he told counsel the statement was fabricated.

The Petitioner testified that he decided not to testify after consulting with trial counsel about the risks and benefits of testifying. He said he wanted to testify and thought it was counsel's "fault" he did not testify. He acknowledged that during the trial, he was questioned in the courtroom by counsel and the trial judge about his understanding of his right to testify or not to testify. He recalled a conversation in which he told counsel he wanted to testify but said counsel gave reasons why the Petitioner should not testify, which the Petitioner said included the effect of his prior shoplifting conviction on the jury. The Petitioner said he told the court that after conferring with counsel, it was solely the Petitioner's decision not to testify.

The Petitioner testified that he wrote letters to trial counsel about the arguments to be raised on appeal but that he never received a response. He said that he received a copy of the brief before it was filed and that he probably could have suggested "amendments" but that he had not. He said the *Ferguson*/*Brady* issue should have been addressed differently in the brief.

The Petitioner's mother testified that she hired trial counsel on the Petitioner's behalf. She said she did not go to counsel's office to retain him and that her daughter found counsel online. She said she hired him shortly before the preliminary hearing but did not remember the date. She said she spoke with counsel by telephone regarding developments in the case.

The Petitioner's mother testified that she and counsel never discussed whether the gas station where the offense occurred had surveillance cameras. She said that at some point after the preliminary hearing and before the trial, she contacted the gas station and was told they did not retain the "tapes." She did not know whether cameras existed outside the gas station.

The Petitioner's mother testified that she was never asked to hire someone to determine the distance from the gas station to the school and said she thought this would

have been counsel's responsibility. She said that before the trial, she and the Petitioner discussed the distance, that she thought it would be an issue, and that she thought counsel "was going to take care of that." She said that to the present day, she had not hired anyone to measure the distance.

Trial counsel testified that following the Petitioner's arrest on October 30, 2007, he was retained to represent the Petitioner in February 2008, which was about one month before the preliminary hearing. He said that before he was retained, he met with the Petitioner and the Petitioner's mother at counsel's office. Counsel said they met three times before the preliminary hearing. He said that the Petitioner denied giving an oral or written statement to the police and that he learned of the Petitioner's statement at the preliminary hearing. Counsel denied that the Petitioner told him the statement was full of lies and that they discussed seeking suppression of the statement because it was untruthful. Counsel said that after the statement came to light, the Petitioner claimed to have forgotten he made it. Counsel said that the Petitioner never told him the Petitioner was intoxicated when he made the statement and that the day of the post-conviction hearing was the first time he heard this claim.

Trial counsel testified that based upon the Petitioner's pretrial statement and the laboratory results, he told the Petitioner "from beginning to end" that the only way to prevail would be to have the evidence suppressed. The brief that counsel wrote in support of the motion to suppress was received as an exhibit.

Trial counsel testified that after the motion to suppress was denied, the State did not withdraw the plea offer. Counsel advised the Petitioner that despite the "harsh" nature of the State's plea offer, accepting it was the Petitioner's only option because the result would be worse if the case went to trial. Counsel said that against his advice, the Petitioner decided to take the case to trial. Counsel said the Petitioner understood that if the Petitioner were found guilty, he faced a much more severe sentence. Counsel recalled that before the trial, he sent the Petitioner a two-page letter explaining "the whole range of possibilities."

Trial counsel testified that the Petitioner made the decision not to testify. When asked about the Petitioner's testimony that the Petitioner told counsel he wanted to testify, counsel did not recall the Petitioner's saying he wanted to testify. Counsel said he advised the Petitioner that the decision was the Petitioner's but that testifying would be a risk. Counsel said he advised the Petitioner that the defense had no witnesses, that the jury would hear multiple times the contents of the Petitioner's pretrial statement, and that the Petitioner's testifying "was going to make a bad situation worse." Counsel said he told the Petitioner that if the Petitioner planned to testify, the Petitioner needed to tell

counsel what he would say in order for counsel to advise the Petitioner whether the testimony would be useful. Counsel said, though, the Petitioner "couldn't tell [counsel] what he would say."

Trial counsel testified that because the offense occurred in a drug-free school zone, the penalty was increased. He said that he researched tax records, tax maps, and deed records to determine if the distance was less than 1,000' and that he did not see anything that warranted hiring a defense expert to challenge the measurement. He said he cross-examined the State's witnesses about the distance.

Trial counsel testified that he went to the gas station at which the offense occurred and inquired about surveillance recordings but was told the recording was not retained beyond approximately two days. He said any recording relative to the offense would have been erased long before he was retained to represent the Petitioner.

Trial counsel testified that he gave the Petitioner a draft of the appellate brief and told the Petitioner he welcomed any feedback. Counsel said the only feedback he received consisted of a list of cases the Petitioner's father mailed to counsel. Counsel said he made the Petitioner aware of the Petitioner's father's suggestions but advised the Petitioner that counsel did not think the cases were persuasive. Counsel said he told the Petitioner that counsel ethically could not make certain arguments but that the Petitioner could file a pro se supplemental brief.

After receiving the proof, the post-conviction court denied relief. This appeal followed, in which the Petitioner raises three issues related to his ineffective assistance of counsel allegation and one issue regarding an evidentiary ruling at the post-conviction hearing.

# I

## Ineffective Assistance of Counsel

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction

court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.

## Failure to Raise *Brady* Issue

The Petitioner contends that trial counsel was ineffective because counsel framed an issue regarding the State's failure to preserve the identity of the unidentified man from the gas station as a "missing witness" issue, rather than as an issue of the State's failure to disclose favorable, material evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

The State counters that the post-conviction court did not err in denying relief because the Petitioner failed to prove deficiency and prejudice.

As a panel of this court noted in the Petitioner's previous appeal, trial counsel requested a jury instruction relative to the unidentified man from the gas station. Trial counsel's brief in the previous appeal referred to the "missing witness rule" and Tennessee Pattern Instruction 42.16, pertaining to an absent material witness. *See Stephen O. Hughes-Mabry*, 2013 WL 4046466, at \*12. In the previous appeal, this court noted, "[T]hroughout these proceedings, the [*State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999),] issue and the 'missing witness' rule are often referred to interchangeably. They are not the same thing." *Id.* at \*15. The panel likewise noted that the appellate record did not contain the written motion counsel filed which requested the instruction. *Id.* at \*12 n.6. The panel determined that despite the inaccurate terminology used, counsel had requested a *Ferguson* instruction, not a missing witness instruction, in the trial court. *Compare* 7 Tennessee Practice, T.P.I.—Crim. 42.16 (18th ed. 2015) (setting forth the absent material witness instruction) *with* 7 Tennessee Practice, T.P.I.—Crim. 42.23 (18th ed. 2015) (setting forth the instruction relative to the State's duty to gather, preserve, and produce evidence that may possess exculpatory value). The panel determined that the trial court did not err in denying the request for a *Ferguson* instruction. In the process of analyzing the issue, the panel stated that the prosecution had a duty to preserve the identity of the unidentified man and that because it did not, "a violation of *Brady* did occur." *Id.* at \*18. The Petitioner's present post-conviction claim is based, in part, upon this statement in the previous appeal.

In the previous appeal, the panel explained the principles of *Ferguson*:

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial.[1] To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Further, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about a

---

[1]"As a general rule, . . . a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome." *Ferguson*, 2 S.W.3d at 914 n. 3 (citing *Betts v. Brady*, 316 U.S. 455, 462, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942); *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141, 144 (Tenn. 1965); *Lofton v. State*, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994)).

defendant's guilt. *United States v. Agurs,* 427 U.S. 97, 110-11, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

In the case of *Ferguson,* 2 S.W.3d at 916, our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence deprived a defendant of a fair trial. The initial analytical step in this test for determining whether there was any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Ferguson,* 2 S.W.3d at 917 (quoting *California v. Trombetta,* 467 U.S. 479, 488-89, 104 S. Ct. 2528, 81 L.Ed.2d 413 (1984)). The court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." *Id.* Accordingly, those factors include: "(1) The degree of negligence involved; (2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) The sufficiency of the other evidence used at trial to support the conviction." *Id.* at 917.

If the trial court determines that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges or craft such orders as may be appropriate to protect the defendant's right to a fair trial. *Id.* The court provided that, "[a]s an example, the trial judge may determine, under the facts and circumstances of the case, that the defendant's rights would best be protected by a jury instruction." *Id.*

*Steven O. Hughes-Mabry*, 2013 WL 4046466, at *16.

-11-

As the panel noted in the previous appeal, the initial analytical framework of *Ferguson* incorporates a *Brady* analysis. *Id.* at *17; *see Ferguson*, 2 S.W.3d at 917 n.9. *Brady* provides that the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to his guilt or lack thereof or to the potential punishment faced by a defendant. *See Brady*, 373 U.S. at 87. In order to establish a due process violation, a defendant alleging a *Brady* violation must prove by a preponderance of the evidence that (1) he requested the information, unless it is obviously exculpatory, (2) the State must have suppressed the information, (3) the information must be favorable to the accused, and (4) the information must be material. *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Favorable evidence includes that which "challenges the credibility of a key prosecution witness." *Johnson v. State*, 38 S.W.3d 52, 56-57 (2001) (internal quotation marks and citation omitted). Evidence is material when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 58 (quoting *Edgin*, 902 S.W.2d at 390); *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("A 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985))).

In conducting its *Ferguson* analysis in the previous appeal, the panel stated, "Clearly, the identity of this individual was material to the defense." *Stephen O. Hughes-Mabry*, 2013 WL 4046466, at *18. The panel then considered the remaining factors in the *Ferguson* analysis and determined that relief was not warranted. *Id.*

We are troubled by the statement by the panel of this court that "a *Brady* violation did occur" and its characterization of the evidence as "material," even though the panel determined, ultimately, that the Petitioner had not been denied a fair trial. We note that the panel was not presented with a *Brady* issue, per se, and that its statements about *Brady* were in the context of analyzing the *Ferguson* issue. When the statements regarding materiality and a *Brady* "violation" are read in the overall context of the opinion and its result, it is apparent that the court considered the unidentified man's identity to be evidence that should have been preserved pursuant to *Brady* but that the evidence was not constitutionally "material" in the sense that confidence in the trial is undermined by the lack of disclosure. *See id.* at *12-18.

With this conclusion in mind, we return to the *Brady* issue presented in the Petitioner's present post-conviction case. In its order denying relief, the post-conviction court noted that the *Ferguson* issue had been raised in the appeal of the Petitioner's convictions and stated, "It appears that the [Court of Criminal Appeals] eliminated *Brady*

as a theory at the direct appeal although stating *Brady* could be applicable. This issue is without merit."

In his argument to this court, the Petitioner has not addressed the factors that must be established to show a due process violation resulting from a failure to disclose *Brady* material. To show that trial counsel provided deficient performance in framing the issue regarding the unidentified man as a *Ferguson* issue, not as a free-standing *Brady* issue, and that the Petitioner was prejudiced by the failure, the Petitioner must first show that he had a viable *Brady* due process claim. We note, particularly, the absence of a showing of materiality of the unknown man's identity, given the other evidence of the Petitioner's guilt, including his pretrial statement, in which the Petitioner admitted selling drugs, and the numerous individual packages of drugs he possessed at the time of his arrest. We likewise note the trial court's finding, in the context of the *Ferguson* issue, that the lost evidence was of "minimal significance." *Stephen O. Hughes-Mabry*, 2013 WL 4046466, at *18. In view of the underlying facts, we conclude that counsel cannot be faulted because he did not raise a *Brady* claim upon which the Petitioner would not have prevailed. We conclude, therefore, that the post-conviction court did not err in determining that the Petitioner is not entitled to relief on this basis.

**B.**

**Failure to Pursue a Motion to Suppress Regarding the Evidence of the Unidentified Man**

The Petitioner contends that trial counsel was ineffective for failing to argue in the motion to suppress that the evidence of the unidentified man at the gas station should have been excluded. The Petitioner claims, without citation to authority, that the evidence was "unduly prejudicial" without the unidentified man's being present to corroborate the police officers' testimony regarding the circumstances of the Petitioner's arrest. This allegation of ineffective assistance of counsel was not raised in the pro se or amended petitions, and it was not litigated at the post-conviction hearing. The issue is waived. T.C.A. § 40-30-106(g) (2012) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]"); T.R.A.P. 36(a) ([R]elief may not be granted in contravention of the trier of fact."); Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this court.").

**C.**

## Failure to Investigate Video Surveillance Footage of the Crime Scene

The Petitioner contends that trial counsel provided ineffective assistance by failing to obtain video surveillance footage from the gas station at which the offenses occurred. The State counters that counsel conducted an adequate investigation and determined that no video footage was available.

Trial counsel testified that he was retained in February 2008, following the Petitioner's arrest on October 30, 2007. Both counsel and the Petitioner's mother testified that they inquired about the gas station's surveillance recordings and were advised that the footage was discarded after about two days. In its order, the post-conviction court found that counsel's testimony was credible. The court found, based upon counsel's testimony, that counsel investigated but that the recording was not available. The court denied relief.

The evidence does not preponderate against the post-conviction court's factual determinations. The court did not err in denying relief on this basis.

### D.

## Failure to Distinguish Between Admissions of Prior Wrongdoing and Confessions of Guilt

The Petitioner contends that trial counsel was ineffective in failing to make a distinction to the jury between an admission of prior wrongdoing and a confession of guilt. He argues that his admission in his pretrial statement that he sold drugs, which he claims referred to conduct that occurred before the charged conduct, was not an admission of the charged conduct. The State counters that the Petitioner failed to establish counsel's ineffectiveness in this regard.

In the amended petition, the Petitioner alleged that trial counsel was ineffective because counsel did not request a jury instruction regarding the difference between an admission and a confession. The transcript of the post-conviction hearing reflects that post-conviction counsel withdrew this issue from consideration. In its order denying relief, the post-conviction court found that the issue was "voluntarily abandoned," and the court did not make factual findings or legal conclusions relative to this allegation.

Appellate consideration of this issue is waived. *See* T.C.A. § 40-30-106(g); T.R.A.P. 36(a). The Petitioner is not entitled to relief on this basis.

-14-

## II

## **Exclusion of Evidence**

The Petitioner contends that the post-conviction court erred by prohibiting him from testifying about trial counsel's advice regarding whether the Petitioner should testify at the trial. The State counters that the court properly determined that the Petitioner did not raise a claim that his decision to testify had been unknowing and, that despite the evidentiary ruling, the court permitted the Petitioner to testify about the advice he received regarding testifying at the trial.

At the post-conviction hearing, the prosecutor objected to the Petitioner's testimony that the Petitioner thought it was trial counsel's "fault" the Petitioner did not testify at the trial. The prosecutor based his objection on the lack of an allegation regarding the voluntariness of the Petitioner's decision not to testify. Post-conviction counsel advised the court that the pro se petition and amended petition did not contain an allegation of this nature. Counsel stated:

> [T]he reason it's not in the amended petition or the pro se ones, 'cause it's nothing he and I discussed till we prepared for this hearing the other day. So this is a new issue to me, quite frankly. And I'm just trying to cover my bases and . . . address everything he's brought up to me. . . . I was not made aware of it when I did my amended petition, . . . that I needed to add this as a ground.

The judge stated, "I'm not going to reopen a *Momon* issue if everybody agrees that we went through a *Momon* scenario." The parties agreed that at the trial, the Petitioner was examined pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), about his personal waiver of his right to testify. The court sustained the State's objection. On cross-examination, however, the Petitioner acknowledged he had stated upon questioning by trial counsel and the trial court that he made the decision not to testify. The Petitioner stated that nevertheless, he had wanted to testify but had been persuaded not to testify after speaking with counsel, who advised against it. The court did not address the issue in its order denying relief.

At a post-conviction hearing, the proof is limited to the issues that were raised in the petition. Tenn. R. Sup. Ct. 28, § 8(D)(4); T.C.A. § 40-30-110(c) (2012) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."). Questions regarding the admissibility and relevancy

of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). We conclude that the post-conviction court did not abuse its discretion in excluding evidence related to a claim that was not raised in the pro se petition or the amended petition.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

ROBERT H. MONTGOMERY, JR., JUDGE